**In the United States District Court
for the District of Kansas**

————————

Case No. 24-cv-01203-TC

————————

PHILLIP L.,[1]

*Plaintiff*

v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY,[2]

*Defendant*

————————

## MEMORANDUM AND ORDER

Plaintiff Phillip L. claims that he had a disability covered under the Social Security Act. He seeks review of a decision of the Commissioner of Social Security denying him a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* For the following reasons, the Commissioner's final decision is reversed and the case is remanded.

---

[1] Plaintiff is referred to only by first name and initials to protect his privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

[2] Frank Bisignano was sworn in as Commissioner of Social Security on May 7, 2025. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Bisignano is substituted for the former Acting Commissioner, Michelle King, as the defendant. No further action is necessary. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

# I

## A

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, the court will "not reweigh the evidence or try the issues de novo," but it will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.* (citations omitted).

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e),

416.920(e). A claimant's RFC is the most the claimant can do despite limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

Citing mental health impairments—including major depressive disorder, social anxiety disorder, dysthymic disorder, attention deficit hyperactivity disorder, and alcohol abuse disorder—Phillip L. filed an application for Disability Insurance Benefits inJuly, 2022, alleging a disability beginning in June 2022. Adm. Rec. at 167–69; Doc. 1 at 1–2.[3]

The Commissioner denied Phillip L.'s claim at the initial and reconsideration levels. Adm. Rec. at 93–97, 99–102. Phillip L. then appeared before an ALJ in January 2024, and the ALJ found him not disabled. Adm. Rec. at 11–31, 32–62, 106–07. The Appeals Council denied Phillip L.'s request for review in September 2024, making the ALJ's decision the Commissioner's final decision. Adm. Rec. at 1–6, 165–66.

The ALJ followed the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Phillip L. had not engaged in substantial gainful activity since the alleged onset date of his disability. Adm. Rec. at 16. At step two, the ALJ found that Phillip L. had the following severe impairments: major depressive

---

[3] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

disorder, social anxiety disorder, dysthymic disorder, attention deficit hyperactivity disorder (ADHD), and alcohol abuse disorder. *Id.*

At step three, the ALJ considered the mental-disorder listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically Listings 12.04 (depressive disorders), 12.06 (anxiety disorders), and 12.11 (neurodevelopmental disorders). Adm. Rec. at 17. The ALJ found that Phillip L.'s impairments did not meet or medically equal any of them. *Id.* The "Paragraph B" criteria are the four broad areas of mental functioning the agency uses to rate the severity of a mental impairment at steps two and three; a claimant satisfies them only by showing one extreme or two marked limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b), (E)–(F). In evaluating the Paragraph B criteria, the ALJ found Phillip L. had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. *Id.* at 17–18.

Before proceeding to step four, the ALJ assessed Phillip L.'s residual functional capacity (RFC) and found that Phillip L. could perform a full range of work at all exertional levels with the following nonexertional limitations:

> The claimant can perform simple, routine, repetitive tasks in a low stress work environment with no production rate pace requirements; can make simple work-related decisions; can tolerate few changes in a routine work setting; can have no interaction with the public; occasional interaction with coworkers not requiring group tasks or collaboration; and occasional interaction with supervisors.

Adm. Rec. at 18.

The ALJ adhered to the governing rules and regulations in reaching her findings. In particular, pursuant to 20 C.F.R. § 404.1529 and SSR 16-3p, the ALJ based her findings on a comparison between Phillip L.'s symptoms and the medical record. Adm. Rec. at 18. And the ALJ considered each medical opinion in accordance with the requirements of 20 C.F.R. § 404.1520c and explained how the evidence supported her findings. *Id.*

In formulating this RFC, the ALJ considered medical opinions from several sources. The state psychological consultants, Drs. Stalker and Akeson, opined that Phillip L. had moderate Paragraph B

4

limitations and could understand and remember simple instructions, maintain concentration and pace with simple instructions, would do better without frequent public contact, and could adjust to changes introduced gradually. Adm. Rec. at 21; *see id.* at 69–71, 79–81. The ALJ found these opinions "persuasive." *Id.* at 21.

Three other sources provided opinions reflecting greater limitations. Ms. Bartel, Phillip L.'s therapist, completed a physical Medical Source Statement in January 2023 opining that Phillip L. would be off task 25% of the time, would have bad days due to impairments, would miss more than four days per month, and was "incapable" of "low stress" work. Adm. Rec. at 550. The ALJ found Bartel's opinion only "partially persuasive," noting that the "be absent and off task 25%" conclusion was "not supported by mental status exams noting oriented with logical and goal directed behavior; reported activities including cooking, shopping, cleaning, paying bills and caring for hygiene, and claimant's statement noting improvement on increased medication." *Id.* at 22. The ALJ also noted that a social worker is not an "approved medical source by agency standards." *Id.*

Dr. Wadood, Phillip L.'s treating psychiatrist, also completed a Medical Source Statement. In September 2022, Wadood opined that Phillip L. had marked and extreme limitations across multiple functional areas, would need to leave work early, would be absent four or more days per month, and would be off task 25% or more. Adm. Rec. at 507–09. Wadood's opinion also assessed moderate limitations in several areas, including the ability to remember locations and work-like procedures, the ability to maintain a schedule and regular attendance, and the ability to be aware of normal hazards and take appropriate precautions. *Id.* at 507–08. The ALJ again found Wadood's opinion only "partially persuasive," stating: "The opinion is supported by the medical record in that the claimant has severe mental impairments. However, marked, and extreme limitations, need to leave early, be absent and off task 25% is not supported by mental status exams noting oriented with logical and goal directed behavior; reported activities including cooking, shopping, cleaning, paying bills and caring for hygiene, and claimant's statement noting improvement on increased medication." *Id.* at 22.

Dr. Tamano completed a mental Medical Source Statement, too. In November 2023, he assessed marked limitations in several areas, including carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a normal workday

without interruption, and responding to changes in the work setting, and opined that Phillip L. would miss three days per month due to symptoms. Adm. Rec. at 575–76. He also assessed moderate limitations in the abilities to maintain a schedule and regular attendance, to be aware of normal hazards and take appropriate precautions, and to ask simple questions or request assistance, and a mild limitation in remembering locations and work-like procedures. *Id.* at 575–76. The ALJ found this opinion "partially persuasive" for the same reasons given for Dr. Wadood's opinion. *Id.* at 22.

The ALJ proceeded to the final two steps. At step four, the ALJ found that Phillip L. had no past relevant work. Adm. Rec. at 23. At step five, relying on vocational expert testimony, the ALJ found that Phillip L. could perform work existing in significant numbers in the national economy, including cleaner II, box truck washer, and laundry worker II. *Id.* at 23–24. Accordingly, the ALJ concluded that Phillip L. was not disabled. *Id.* at 25.

## II

Phillip L. argues that the ALJ's RFC assessment did not comply with Social Security Ruling 96-8p because the ALJ omitted limitations from medical opinions she found "partially persuasive" without explaining the omissions. Doc. 6 at 7–12. The argument succeeds in part. Some of the omitted limitations are adequately accounted for by the RFC's restriction to simple work and limited social interaction, and as to those the ALJ did not err. But two issues warrant remand. First, the ALJ made a "low stress" RFC finding despite a medical source opinion to the contrary and the ALJ provided no explanation for the conflict. Second, the RFC omits moderate limitations in attendance and hazard awareness that the ALJ neither rejected nor accounted for. Because those unexplained conflicts may have affected the outcome, the Commissioner's final decision is reversed and the case is remanded for further proceedings.

Phillip L. argues that the ALJ did not adhere to that standard when making two of her findings. First, he argues the ALJ failed to explain why she did not adopt a medical opinion concerning Phillip L.'s stress level. Doc. 6 at 10–12. Second, he argues the ALJ neither rejected nor accounted for Phillip L.'s moderate limitations in attendance and hazard awareness when making her RFC findings. The analysis considers each argument in turn.

**A**

Phillip L. first argues that SSR 96-8p required the ALJ to explain why the RFC assessment noting low stress conflicted with Bartel's opinion. Doc. 6 at 10–12. Generally speaking, Social Security Ruling 96-8p defines how an ALJ assesses a claimant's RFC. "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990). The Commissioner issued Social Security Ruling 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." 1996 WL 374184, at *1 (SSA July 2, 1996). As relevant here, the ruling requires that the RFC assessment "must always consider and address medical source opinions." *Id.* If the ALJ's RFC assessment "conflicts with a medical source opinion, the [ALJ] must explain why that opinion was not adopted." *Id.* at *7.

As noted, Bartel opined that Phillip L. would be "off task 25% of the time, would have bad days due to impairments, would miss more than 4 days a month work and was incapable of 'low stress' work." Adm. Rec. at 22. The ALJ nonetheless found that Phillip L. could "perform simple, routine, repetitive tasks in a low stress work environment." Adm. Rec. at 18. In support, the ALJ explained that she found Bartel's opinion "partially persuasive." *Id.* The ALJ noted that Bartel's "opinion [was] supported by the medical record in that the claimant has severe mental impairments." *Id.* But the ALJ also found that Bartel's opinions concerning Phillip L. "[being] absent and off task 25% [were] not supported by mental status exams" and "claimant's statement noting improvement on increased medication." *Id.*

The ALJ addressed only two parts of Bartel's opinion—the absenteeism and the off-task estimates—and found them unsupported. The ALJ said nothing about the separate opinion that Phillip L. is "incapable" of low-stress work. Adm. Rec. at 22. The RFC's "low stress work environment" statement, *id.* at 18, notably, addresses the same functional concept as Bartel's opinion, but reaches the opposite conclusion without explanation. *Compare* Adm. Rec. at 18 (limiting Phillip L. to a "low stress work environment"), *with id.* at 22 (recounting the ALJ's acknowledgment that Bartel found Phillip L. "incapable" of "low stress" work).

7

On the assumption that the ruling applies to Bartel's opinion,[4] this falls short of the ALJ's obligation. As set out above, when an "RFC assessment conflicts with an opinion from a medical source, . . . [the ALJ must] explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7; *see also Cox v. Berryhill*, No. 17-1284, 2018 WL 3575648, at *4 (D. Kan. July 25, 2018) (concluding, in similar circumstances, "it is necessary for the ALJ to explain the degree of stress to which Plaintiff [is] susceptible, and why the jobs at issue here do not produce that stress in this claimant"). The ALJ did not do that concerning Bartel's conclusions.

The ALJ's failure to explain her low stress finding in light of Bartel's contrary conclusion warrants reversal. "The agency's failure to apply correct legal standards, or show us it has done so, [provides] grounds for reversal." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214, 1224 (10th Cir. 2004) (same; where ALJ rejected opinions without engaging in analysis required by Social Security Ruling and Tenth Circuit case law). It is instructive that the Tenth Circuit enforced that same duty in *Sitsler v. Barnhart*, 182 F. App'x 819 (10th Cir. 2006). There, the ALJ left the limitations assessed in a consultative psychologist's medical source statement out of the RFC without explanation, and the court reversed, quoting SSR 96-8p's directive that "[i]f the RFC assessment conflicts

---

[4] As a preliminary matter, neither party addresses whether Bartel, a licensed clinical social worker, falls within SSR 96-8p's reference to "an opinion from a medical source." SSR 96-8p does not define "medical source" and the regulations that do provide a definition that has changed over time. When the ruling issued, a "medical opinion" could come only from an "acceptable medical source," a category that excluded social workers. 20 C.F.R. §§ 404.1527(a)(2), 404.1513 (2016); *see* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006) (rescinded Mar. 27, 2017). Amendments in 2017 made any licensed healthcare worker, including a social worker, a "medical source" who may give a "medical opinion." *Id.* §§ 404.1502(d), 404.1513(a)(2). Whether SSR 96-8p's unamended reference takes the older meaning or the current one is unresolved. But, given that the Commissioner has not pressed the narrower reading, the analysis proceeds on the assumption that Bartel's opinion sits within SSR 96-8p's scope. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) ("Because courts are 'essentially passive instruments of government,' we rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'") (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020)).

with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 822–23.

**B**

Phillip L. next argues that SSR 96-8p likewise required the ALJ to explain why the RFC did not adopt the moderate limitations Wadood and Tamano assessed. Doc. 6 at 8. Between them, the two psychiatrists assessed four such limitations, namely, remembering work-like procedures, asking simple questions or requesting assistance, maintaining a schedule and regular attendance, and being aware of ordinary workplace hazards. Adm. Rec. at 507–08, 575–76. The first two do not justify intervention. The last two require remand.

The limitations in remembering work-like procedures and in asking simple questions require no separate explanation. A limitation to simple, routine work absorbs a moderate limitation in understanding or memory. *See Vigil v. Colvin*, 805 F.3d 1199, 1203–04 (10th Cir. 2015) (noting ALJ "account[ed] for [the claimant's] moderate concentration, persistence, and pace problems … by limiting him to unskilled work"). And the public contact RFC finding adequately accommodates the moderate limitation in social interaction. *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (finding RFC limiting claimant to "simple, repetitive, and routine tasks" with no public contact "incorporated the functional limitations of [the claimant's] moderate nonexertional impairments"). Considered together, then, the RFC's restriction to simple, routine, repetitive tasks, with no public contact and only occasional, non-collaborative interaction with others, adequately captures those limitations. There is thus no conflict to explain, and SSR 96-8p required nothing further. *See Vigil*, 805 F.3d at 1203–04; *Smith*, 821 F.3d at 1269. To that extent, Phillip L.'s argument is rejected.

The attendance and hazard limitations are different. Wadood and Tamano each concluded that Phillip L. is moderately limited in maintaining a schedule and regular attendance and in recognizing ordinary workplace hazards, Adm. Rec. at 507–08, 575–76, and the ALJ did not engage with either conclusion. The RFC conflicts with both and the ALJ never explained why those opinions were not adopted. That unexplained conflict violates SSR 96-8p. *See* 1996 WL 374184, at *7; *see Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007); *see also Sitsler*, 182 F. App'x at 822–23.

Neither limitation is absorbed by the RFC's simple-work restrictions. Hazard awareness falls within a different area of mental functioning, namely, adaptation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(4). And maintaining regular attendance concerns showing up reliably, not staying on task. *See Vigil*, 805 F.3d at 1204; *Nichols v. Colvin*, No. 12-2243, 2013 WL 5276107, at *3 (D. Kan. Sept. 18, 2013) (remanding where a simple-work RFC neither included nor explained the omission of a moderate attendance limitation); *Nerland v. Berryhill*, No. 16-1300, 2017 WL 3453461, at *4 (D. Kan. Aug. 11, 2017) (same). Because the RFC conflicts with these limitations and the ALJ never explained why they were not adopted, remand is required. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (the ALJ "must discuss … significantly probative evidence he rejects"); *Haga*, 482 F.3d at 1208.

The ALJ's uniform explanations confirm the gap. She discounted all three opinions in virtually identical language aimed at "marked, and extreme limitations," absenteeism, and being "off task 25%." Adm. Rec. at 22. She did so even for Tamano, who assessed no extreme limitation and no 25% off-task figure. *Id.* at 575–76. Reasons directed at those findings do not explain the omission of distinct moderate limitations in attendance and hazard awareness. See *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007).

The Commissioner's arguments to the contrary do not undermine these conclusions. As an initial matter, it appears the Commissioner's position in this case has been confused with another. For example, the Commissioner never engages with the two witnesses' discussion of the attendance and hazard limitations at issue. Instead, it appears, at least in part, to address issues from the wrong case as it attributes to Phillip L. positions on limitations he never raised, Doc. 12 at 13, and cites non-existent portions of the record, c*ompare, e.g.,* Doc. 12 at 13 (citing"Tr. 1893-94"); *with* Doc. 5 (showing only 638 pages). Those issues will be ignored.

But even the properly raised arguments fail. The Commissioner maintains that Section 404.1520c(b)(1) requires only source-level articulation and that the ALJ was not required to assess every statement in the opinions individually. Doc. 12 at 12–13. This conflates two standards: Section 404.1520c governs how an ALJ evaluates and articulates the persuasiveness of a medical opinion, and it permits the ALJ to articulate that persuasiveness at the source level rather than statement by statement. 20 C.F.R. § 404.1520c(b)(1). SSR 96-8p, by contrast, governs construction of the RFC and separately requires the ALJ to

explain why a credited medical source opinion that conflicts with the RFC was not adopted. SSR 96-8p, 1996 WL 374184, at *7. So it is true that Section 404.1520c(b)(1) permits source-level articulation when the ALJ assesses an opinion's persuasiveness. The Commissioner fails to cite any binding authority suggesting that complying with Section 404.1520c(b)(1) supplants the requirements of SSR 96-8p when constructing the RFC narrative where the ALJ has credited an opinion. Indeed, courts in this District continue to enforce the ruling's requirement in post-2017 claims, including in the Commissioner's own cited authority. *See Mikela Rene R. v. Dudek*, No. 24-1156, 2025 WL 1167981, at *5 (D. Kan. Apr. 22, 2025) (noting SSR 96-8p "require[s] an ALJ to explain why a medical opinion was not adopted if the opinion conflicts with the RFC assessed"); *James Bradley H. v. O'Malley*, No. 23-2514, 2024 WL 4103642, at *3, *6–7 (D. Kan. Sept. 6, 2024) (remanding where the ALJ failed to do so).

The distinction between Section 404.1520c's persuasiveness-articulation requirement and SSR 96-8p's separate RFC-narrative duty also forecloses the Commissioner's reliance on the agency's rulemaking preamble. The Commissioner cites 82 Fed. Reg. at 5,858 for the proposition that the articulation requirements of Section 404.1520c "will allow a subsequent reviewer or a reviewing court to trace the path of an adjudicator's reasoning," Doc. 12 at 11 (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,858 (Jan. 18, 2017)). But, again, that statement refers only to the articulation requirements "in these final rules," that is, Section 404.1520c itself, and says nothing about displacing SSR 96-8p's independently imposed duty to explain conflicts between the RFC and medical source opinions.

The Commissioner's cited cases likewise fall short of compelling a different result. The Commissioner cites, for example, *Mikela Rene R.*, 2025 WL 1167981, to argue that the courts in this District have rejected Phillip L.'s "exact argument." Doc. 12 at 15. Not so. *Mikela* involved limitations the RFC could resolve implicitly, and the ALJ there addressed the one conflicting opinion anyway, crediting one absence per month and explaining why the record did not support four. 2025 WL 1167981, at *4–6. The attendance and hazard limitations here could not be resolved implicitly, and the ALJ did not address them at all.

The Commissioner's remaining cases fare no better. Neither *Shad O.S. v. O'Malley*, No. 23-4076, 2024 WL 3429515, at *5 (D. Kan. July 16, 2024), nor *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL

15570650, at *5 (10th Cir. Oct. 28, 2022), stands for the proposition that satisfaction of Section 404.1520c allows an ALJ to avoid complying with SSR 96-8p. *Contra* Doc. 12 at 11–12. *Shad O.S.*, 2024 WL 3429515, at *5, addresses only the persuasiveness-articulation requirement, and *Nielsen,* 2022 WL 15570650, at *5, asks only whether that articulation allows a reviewing court to "trace the path of an adjudicator's reasoning" (quoting 82 Fed. Reg. at 5,858). *Alicia G. v. O'Malley*, No. 22-2268, 2024 WL 53105 (D. Kan. Jan. 4, 2024), does not change the analysis either. In that case, the court excused an ALJ's silence about a limitation because the reasons she gave for discounting the source's opinion necessarily rejected that limitation too. Specifically, rejecting a one-to-two-step restriction necessarily rejected the moderate finding from which it was derived. *Id.* The ALJ's reasons in this case addressed the marked and extreme ratings, the predicted absences, and the off-task estimates. Adm. Rec. at 22. They do not reach, much less necessarily reject, the attendance and hazard limitations or Bartel's low-stress opinion.

None of this means the ALJ was required to adopt these opinions. The largely normal mental-status examinations, Phillip L.'s daily activities, and his reported improvement with medication may well support rejecting them. But to reach that result, the ALJ had to confront the contrary opinions in the first instance; a reviewing court may not supply the explanation the decision lacks. *See Staheli v. Comm'r, SSA*, 84 F.4th 901, 908 n.4 (10th Cir. 2023) (quoting *Haga*, 482 F.3d at 1207–08). On remand, the ALJ may adopt the limitations or explain why she does not.

### III

For the foregoing reasons, the Commissioner's final decision is REVERSED and the case is REMANDED for further proceedings consistent with this order.

It is so ordered.

Date: July 28, 2026                    s/ Toby Crouse
                                       Toby Crouse
                                       United States District Judge

12